Amanda F. Esch (Wyo. State Bar #6-4235)
Catherine M. Young (Wyo. State Bar #7-6089)
DAVIS & CANNON, LLP
P.O. Box 43
Cheyenne, WY 82003
Telephone: 307/634-3210
Fax: 307/778-7118
amanda@davisandcannon.com
catherine@davisandcannon.com

*Counsel for Defendants*
*Buffalo Bill Memorial Association,*
*Kelly Jensen, Rebecca West,*
*Corey Anco, and Melissa Hill*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BONNIE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 21-cv-00092 |
| v. | ) | |
| | ) | |
| BUFFALO BILL MEMORIAL | ) | |
| ASSOCIATION, KELLY JENSEN, | ) | |
| PETER SEIBERT, REBECCA WEST, | ) | |
| COREY ANCO, NATHAN HORTON | ) | |
| And MELISSA HILL, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants Buffalo Bill Memorial Association (the Center), Kelly Jensen, Rebecca West,

Corey Anco, and Melissa Hill, by and through counsel, Davis & Cannon, LLP, submit this brief

in support of their *Motion to Dismiss* pursuant to F.R.C.P. 12(b)(6).

### I.        Introduction

The Buffalo Bill Memorial Association operates the Buffalo Bill Center of the West,

comprised of five museums dedicated to Western culture, art, and history. The Center employed

Plaintiff in various positions between May 2010 and March 2019, most recently as a Curatorial Assistant in the Draper Natural History Museum. The Center terminated Plaintiff's employment on March 28, 2019, due to her years-long pattern of engaging in unproductive gossip, distracting others from their work, and insubordination. In response, Plaintiff filed a perfunctory Charge of Discrimination with the Equal Employment Opportunity Commission (the EEOC) and, now, this lawsuit. Plaintiff is clearly displeased that she has been fired. Displeasure, however, does not create a legitimate cause of action, nor does it excuse her from fulfilling conditions precedent to suits brought under Title VII. The Court should dismiss her Complaint for failure to properly exhaust her administrative remedies and failure to state claims upon which relief can be granted.

## II.      Background[1]

Plaintiff began working for the Center in May 2010. *Complaint* at ¶ 13. She held various positions during her employment with the Center, most recently as a Curatorial Assistant in the Draper National History Museum, until she was fired on March 28, 2019. *Id.* at ¶¶ 13, 16. Plaintiff claims she was fired in retaliation for reporting the incorrect handling of artifacts to federal agencies; based on "a history of both age and gender discrimination"; and due to Rebecca West's "personal vendetta" against her. *Id* at ¶ 23(a)-(c). Plaintiff also claims that "a male-employee with less experience than her [] was hired and promoted above" her and that "[w]hen this was discussed" she was retaliated against because of her gender. *Id.* at ¶ 27.  Plaintiff states that she complied with the Center's Employee Handbook "at all times"; that she "never had poor performance reviews"; and that the reasons given for her termination were fabricated by "Rebecca West and the other individuals individually named" in this lawsuit, pursuant to a conspiracy among them. *Id.* at ¶¶ 25, 28, 31, 33-35.

---

[1] The facts cited in this section are drawn from Plaintiff's Complaint and are assumed to be true only for purposes of this 12(b)(6) motion.

Following her termination, Plaintiff filed a Charge of Discrimination (the Charge) with the EEOC. **Exhibit 1**.[2] In the Charge, Plaintiff checked the boxes for discrimination based on "Sex," "Religion," "Retaliation," and "Age." *Id.* The Charge identifies Plaintiff as "a member of the protected groups female, over the age of forty, and religion (Other)"; states that she was satisfactorily performing her job; and identifies her discharge on March 28, 2019, as the adverse employment action she suffered. *Id.* Beyond that, the Charge makes conclusory allegations of "harassment and intimidation," an abusive and hostile working environment, her subjection to terms and conditions of employment different from employees outside of her protected groups, and her "protected opposition to Title VII prohibited discrimination" without providing *any* underlying facts to support them. *Id.*  In February 2021, the EEOC issued Plaintiff notice of her right to file suit under Title VII. *Complaint* at ¶ 11.

Plaintiff did so, asserting claims for "Discrimination because of Age/Gender," "Retaliation for Reporting," "Breach of Contract," and "Defamation." Each of these claims is analyzed separately below.

---

[2] "[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the documents authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Plaintiff refers to the Charge in her Complaint. *Complaint* at ¶¶ 9-12. And, although no longer considered jurisdictional, filing a charge of discrimination with the EEOC remains central to a Title VII claim because failing to do so is an affirmative defense to bringing a Title VII suit. *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1185-86 (10th Cir. 2018) (overruling precedent holding that filing EEOC charge of discrimination is jurisdictional); *Khalifah v. Brennan*, 2020 WL 1028299, at * 3 (D. Kan March 3, 2020) (considering Plaintiff's EEOC charge without converting motion to dismiss to motion for summary judgment because Plaintiff referred to it in complaint and it was central to plaintiff's Title VII claim); *Simmons v. Sunrise Sr. Living Serv., Inc.*, 2020 WL 1244655, at *4 fn. 3 ("The court may consider plaintiff's EEOC charge because plaintiff incorporated it into her Complaint and the parties do not dispute the documents authenticity."). Thus, the Court may consider the Charge without converting this motion to dismiss to a motion for summary judgment.

### III.     Standard of Review

Rule 8 of the Federal Rules of Civil Procedure requires pleadings to include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" F.R.C.P. 8(a)(2). A defendant may move to dismiss a complaint that fails to demonstrate the plaintiff is entitled to the relief requested. F.R.C.P. 12(b)(6). In determining whether a complaint fails to state a claim for relief under Rule 12(b)(6), the Court is to accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

The standard to survive a motion to dismiss in federal court is well known: a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). A claim is facially plausible when the allegations support a reasonable inference that the defendant is liable. *Mayfield v. Bathards*, 826 F.3d 1252, 1255 (10th Cir. 2016). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.*

## IV.    Argument

### 1.  The Court should dismiss Count I, "Discrimination because of Age/Gender"

The theory underlying Plaintiff's claim of "Discrimination because of Age/Gender" appears to rest on several divergent theories of liability. Plaintiff claims that she was "passed over for advancement due to her age/gender"; that the Center "hired a younger male who had no experience and put him in a position he was not qualified for" because she "was female and not as young"; that the Center terminated her in retaliation for her reporting this employee's substandard performance and destruction of federally owned material; and that the Center's actions "constituted a hostile work environment." Whether rooted in discrimination on the basis of age[3] or in discrimination on the basis of gender, and whether viewed as a claim of wrongful termination, failure to promote, retaliation, or hostile work environment, the claim(s) asserted in Count I fail for a variety of reasons.

### a.  Count I does not state a plausible claim for relief.

As noted, it is not entirely clear whether the count "Discrimination because of Age/Gender" arises from a failure to promote Plaintiff, retaliation against her for some Title VII-protected activity,[4] the existence of a hostile work environment, or from the mere fact of her termination. Whatever the adverse employment action might be, the claim fails as a matter of law. Many of the allegations supporting Plaintiff's intertwined theories are nothing more than conclusory, formulaic

---

[3] Plaintiff's Complaint does not allege that she is a member of a protected class under the ADEA, i.e. age 40 or older. 29 U.S.C. § 631 ("The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age."). Accordingly, any ADEA claim that can be gleaned from the Complaint fails.

[4] Plaintiff brings separate claims for "Discrimination because of Age/Gender" and "Retaliation for Reporting" (as she should since retaliation is a distinct claim under Title VII). However, the "Discrimination because of Age/Gender" count incorporates allegations related to retaliation. To the extent that "Count I Discrimination because of Age/Gender" is predicated on some retaliatory act, the discussion of Plaintiff's "Retaliation for Reporting" claim applies.

recitations that the Court should disregard. Any remaining allegations do not sufficiently allege a violation of Title VII under any theory.

A plaintiff can prove a violation of Title VII by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 799 fn.7, *abrogated on other grounds* (noting that courts apply the same analysis to Title VII and ADEA claims).[5] According to *McDonnell Douglas,* Plaintiff must first prove a prima facie case of discrimination. *Morman v. Campbell Cty. Mem'l Hosp.*, 632 Fed. App'x 927, 933 (10th Cir. 2015). If she does so, the burden "shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant does so, "the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.* While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, courts evaluate a discrimination claim's plausibility "by considering the prima facie case of discrimination that she would need to prove" at trial. *Id.*

The articulation of a plaintiff's prima facie case may vary, depending on the context of the claim and the nature of the adverse employment action alleged. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Generally, however, "to set forth a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse

---

[5] A plaintiff can also prove discrimination through direct evidence "by establishing proof of an existing policy which itself constitutes discrimination," *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000), or some other direct evidence of discrimination. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (stating that evidence that a person with decisionmaking authority acted on his personal discriminatory belief can constitute direct evidence of discrimination). Plaintiff has not alleged any such policy or other direct evidence supporting a claim that would avoid the burden-shifting test.

employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192. The adverse employment action could be termination or failure to promote, among others. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L.ed.2d 633 (1998) (identifying "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" as possible adverse employment actions).

Further, an employer creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002). Thus, "an unlawful employment practice that constitutes a hostile work environment . . . occurs over a series of days or years." *Noland v. City of Albuquerque*, 779 F. Supp.2d 1214, 1227 (D. N.M. 2011).

Many of the allegations supporting Plaintiff's intertwined theories are nothing more than conclusory, formulaic recitations that the Court should disregard. *Khalik*, 671 F.3d at 1193. Those allegations include that: (1) the Center "has a history of both age and gender discrimination," both of which the Plaintiff claims to have "experienced"; (2) the Center and several of its employees engaged in a conspiracy to have her fired; (3) she was "passed over for advancement due to her age/gender" and "being a female"; (4) the stated reasons for her termination were a "complete fabrication" and were instead retaliatory and discriminatory; (5) Center employees were "aggressive, hostile and made a hostile work environment"; (6) "the conduct was sufficiently

severe that a reasonable person in the Plaintiff's position would have found the work environment to be hostile"; (7) all Center supervisors have "by their actions of inactions [(*sic*)] approved or ratified the termination of the Plaintiff; and (8) the Center "has in the past faces [(*sic*)] legal action for retaliating against Plaintiff's [(*sic*)] in similar circumstances including for retaliating related to sex discrimination, sexual harassment, age discrimination." *See Complaint* at ¶¶ 23, 23b, 27, 33, 34, 35, 37, 38, 40, 42, 43, 44, 50. None of these allegations contain any specific facts that satisfy the required legal standard. Such allegations are not entitled to the assumption of truth. *Khalik*, 671 F.3d at 1193. Instead, "a plaintiff must include some further detail for a claim to be plausible." *Id.* at 1194.

Striking those conclusory allegations leaves us with the following: (1) Plaintiff is female; (2) Plaintiff complied with the Center's employee handbook; (3) Plaintiff never had poor performance reviews and performed her work satisfactorily; (4) Rebecca West was a temporary acting supervisor who "had a known and stated vendetta against the Plaintiff" that was unknown to the Center's CEO; (5) an inexperienced and incompetent male employee who was younger than Plaintiff was hired and promoted above Plaintiff; (6) it "was discussed" that "the male employee had no experience and did not do his job correctly" (7) "reports were made" to "the proper federal agencies" and "within" the Center about this employee's "mishandling of artifacts and damaging sampling techniques"; his "meeting with a looter" at an archeological site; and his "destruction of federally owned material due to inappropriate sampling"; (8) Plaintiff had very little interaction with volunteers and "it was learned that there was no complaint made by a volunteer"; (9) Plaintiff had very little interaction with other employees and there were no reports that Plaintiff spent a lot of time chatting/gossiping; and (10) Plaintiff was terminated. *See Complaint* at ¶¶ 14, 21, 22, 23a and c, 25-32, 35-36, 39, 41.

These allegations do not sufficiently allege a violation of Title VII under any theory. The Complaint does not describe why Rebecca West had a vendetta against Plaintiff or what it entailed, much less allege that it arose from discrimination on the basis of sex or age. The Complaint does not allege that Plaintiff applied or was qualified for the position the "younger male" was hired for, nor that she was rejected for the position. *See Jones*, 349 F.3d at 1266 (stating that a plaintiff alleging discrimination based on failure to promote must show that she applied and was qualified for the position sought and, despite being qualified, was rejected). "There are no allegations of similarly situated employees who were treated differently." *Khalik*, 671 F.3d at 1194. The Complaint does not allege that Plaintiff was subjected to *a single instance* of intimidation, ridicule, or insult while employed, let alone that such abusive conditions were pervasive and repeated. In short, there is nothing other than sheer speculation to link Plaintiff's termination/being passed over for promotion to discrimination or an abusive working environment. That is simply not enough to survive a 12(b)(6) motion.

### b. Further, Plaintiff has failed to exhaust her administrative remedies

Exhaustion of administrative remedies is a prerequisite to suits under Title VII. *Wells v. Dynamic Restaurants, LLC*, 2006 WL 118397, at * 3 (D. Colo. 2006). "To exhaust administrative remedies, a Title VII plaintiff generally must present her claims to the EEOC as part of her timely filed 'charge' for which she has received a right-to-sue letter." *Welsh v. City of Shawnee*, 1999 WL 345597, at * 2 (10th Cir. June 1, 1999). "A plaintiff normally may not bring a Title VII claim based upon acts that were not part of a timely-filed EEOC charge." *Foster v. Ruhrpumpen, Inc.* 365 F.3d 1191, 1194 (10th Cir. 2004) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

This EEOC charge "must at a minimum . . . describe generally the action or practices complained of." *Welsh*, 1999 WL 345597, at * 2. "The charge tells the EEOC what to investigate,

provides it with the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation." *Id.* While courts liberally construe a plaintiff's allegations in an EEOC charge, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith w. Cheyenne Retirement Investors, LLC*, 904 F.3d 1159, 1164 (10th Cir. 2018). The determinative issue is whether "the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Id.* (quotations and alterations omitted).

For example, in *Smith* the Tenth Circuit held that although the Plaintiff's EEOC charge had alleged retaliation, the charge did not encompass the Title VII retaliation claim she brought in a subsequent lawsuit. *Id.* at 1165. There, the Plaintiff brought a lawsuit alleging that her employer retaliated against her for filing an EEOC charge in 2012. The EEOC had dismissed the 2012 charge and issued her a right-to-sue letter, but the Plaintiff did not pursue her 2012 claims in court. *Id.* at 1161, 1165. In 2014, Plaintiff filed another EEOC charge, this time alleging retaliation. *Id.* The EEOC also dismissed this charge and issued her a right to sue letter. *Id.* at 1162. The Plaintiff filed suit, alleging that her termination was in retaliation for filing the 2012 EEOC charge. *Id.* at 1163. The Court examined her 2014 EEOC charge to determine whether the claim she brought in court "was within the scope of the administrative investigation that would 'reasonably be expected to follows from the discriminatory <u>acts</u> alleged in the administrative charge.'" *Id.* at 1165 (emphasis in original) (quoting *Jones v. U.P.S, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). The 2014 charge alleged retaliation and stated that she was fired for complaining to her manager about her shift supervisor's discriminatory treatment. *Id.* at 1165. The 2014 charge did not allege that she had been retaliated against for filing the 2012 charge, nor did it even mention the 2012 charge. *Id.* Thus, the Court concluded that the retaliation claim brought in her lawsuit was not within the scope

of her 2014 charge and affirmed its dismissal. *Id.* at 1166.  The Charge at issue in this case is even more lacking than the charge discussed in *Smith*. Here, Plaintiff's Charge fails to allege any facts or discriminatory or retaliatory conduct underlying her "Discrimination because of Age/Gender" or "Retaliation for Reporting" claims.

First, to the extent that Plaintiff's Complaint asserts a failure-to-promote claim, Plaintiff failed to preserve this claim in her EEOC charge. The Charge does not contain *any* reference to Plaintiff applying for or being passed over for promotion. **Exhibit 1**.; *See Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003) (stating that a failure to promote claim requires the claimant to make a prima facie demonstration that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) despite being qualified, she was rejected; and (4) after she was rejected, the position was filled.). Instead, the only adverse employment action Plaintiff claimed to have suffered was her discharge on March 28, 2019.  That allegation did not indicate to the EEOC that it should investigate a failure to promote, nor did it provide the Center with notice of the allegedly wrongful conduct such that it had the opportunity to conciliate the claim. *Atkins v. Southwestern Bell Telephone Co.*, 137 Fed. App'x 115, 118 (10th Cir. 2005) ("Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation."); *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) (failure to preserve class claim related to failure to rehire where EEOC charge alleged harassment and made no mention of termination or not being hired). Thus, Plaintiff failed to exhaust her administrative remedies as to any failure-to-promote claim and such a claim cannot be brought in this action. *Id.* ("Abandonment of a claim before the EEOC is a failure to exhaust administrative remedies.").

Likewise, to the extent that Plaintiff's Complaint asserts a pattern-and-practice claim, Plaintiff failed to preserve this claim in her EEOC Charge. The Charge does not contain *any*

reference to a pattern or practice of discrimination or retaliation by the Center. Instead, all allegations in the Charge relate to the individual employment decision taken against the Plaintiff, *i.e.* her termination. *See Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) (explaining that cases alleging individualized discrimination "focus on the reason(s) for the particular employment decisions at issue."). "Pattern-or-practice cases differ significantly from the far more common cases involving one or more claims of individualized discrimination" in that their focus "is not on individual employment decisions, 'but on a pattern of discriminatory decisionmaking.'" *Id.* Thus, in order to preserve a pattern-and-practice claim for a suit in federal court, Plaintiff was required to make allegations of discrimination and/or retaliation beyond the individual adverse employment action she claims to have suffered. She did not.

Similarly, Plaintiff's Charge did not allege any facts or conduct supporting a retaliation claim. In contrast to the failure-to-promote and pattern-and-practice claims, the Charge arguably states the legal elements of a Title VII retaliation claim. *See* Discussion *infra*. However, the Charge does not allege any underlying facts that might give rise to such a claim. Namely, it does not make any attempt to describe the "protected opposition to Title VII prohibited discrimination" Plaintiff allegedly engaged in. Likewise, Plaintiff's Charge did not allege any facts or conduct supporting a hostile work environment claim: it does not contain any description of the "harassment" or "intimidation" she allegedly suffered.

An EEOC charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim" to preserve the claim for suit in federal court. *Smith*, 904 F.3d at 1164. The scope of the administrative investigation that could reasonably have been expected to follow from the allegations in Plaintiff's Charge cannot be said to encompass the allegations in Plaintiff's Complaint because Plaintiff's Charge did not allege *any* discriminatory acts or conduct by the

Center or its employees.[6]  Formulaic recitations of legal elements do not suffice because they do not tell the EEOC what to investigate or provide the employer the opportunity to conciliate. Accordingly, Plaintiff's Title VII claims must be dismissed.

**c.   To the extent that Count I is asserted against any individual, the claim fails as a matter of law and should be dismissed as to the individual defendants.**

Despite bringing claims against both the Center and several individual employees of the Center, Plaintiff's Complaint does not identify which Counts are asserted against which defendants and largely fails to allege acts undertaken by any individual. Count I does not attribute any discriminatory act to any particular individual and therefore fails to state a claim against any individual defendant.[7]  See *Mayfield*, 826 F.3d at 1255 ("A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable."). Moreover, "[t]he relief available under Title VII is against the employer, not the individual employees whose actions would constitute a violation of the Act." *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996). "[T]he proper method for a plaintiff to recover under Title VII is by suing the employer," either by naming the employer directly or by naming supervisory agents of the employer in their official capacities as agents of the employer. *Id.* Thus, to the extent that Count I is asserted against any defendant in his or her individual capacity, the claim must be dismissed.

---

[6] Indeed, to date the Center is unaware of the scope of the EEOC's investigation or even whether it investigated Plaintiff's claims at all. Plaintiff's right to sue letter was issued prior to the EEOC reaching any finding. *See* Exhibit 2 (EEOC Dismissal and Notice of Rights).

[7] Presumably Count I's references to "a younger male" refers to Defendant Corey Anco, whom Defendant refers to as "a younger inexperienced male employee" elsewhere in the Complaint and about whom Plaintiff allegedly made reports of "complete ineptitude," "mishandling of artifacts," and "meeting with a looter." *Complaint* at ¶¶ 32(a)-(d). Regardless, Plaintiff has failed to allege any discriminatory act by Mr. Anco.

## 2. Count II does not state a plausible claim for relief[8]

To establish Title VII-prohibited retaliation, a Plaintiff must make a prima facie demonstration that: "(1) the plaintiff engaged in protected opposition to discrimination; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (alterations omitted). "Opposition to an employer's conduct is protected [] only if it is opposition to a practice made an unlawful employment practice by Title VII." *Id.* "To oppose plain vanilla rude and unfair conduct by [an employer] is not to oppose conduct made unlawful by Title VII." *Id.* Instead, the opposition must relate to an employer's discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Concerning causation, "[a]n employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition." *Peterson*, 301 F.3d at 1188.

As noted, conclusory allegations of "retaliation" must be disregarded. *See* Discussion, *supra*. Leaving such allegations aside, Plaintiff's allegations related to retaliation are that: (1) it "was discussed" that "the male employee had no experience and did not do his job correctly"; (2) "reports were made" to "the proper federal agencies" and "within" the Center about this employee's "mishandling of artifacts and damaging sampling techniques"; his "meeting with a looter" at an archeological site; and his "destruction of federally owned material due to inappropriate sampling"; and (3) Plaintiff was terminated.

---

[8] Once again, Count II does not identify the defendant(s) against which it is asserted and fails to attribute any wrongful acts to any particular individual. *See* Discussion *supra*. Thus, Count II fails to state a claim against any individual defendant.

None of these alleged "discussions" or "reports" constitute opposition to an employment practice made unlawful by Title VII. As righteous as Plaintiff may believe her comments and reports about a fellow employee's ineptitude and mishandling of artifacts to be, they plainly do not concern any discriminatory practice by the Center or any legally prohibited harassment. Additionally, the allegations do not support an inference that the Center terminated Plaintiff *because* of any protected opposition. Absent some indication "that the individual who took adverse action against [her] knew of [her] protected activity," there can be no causal connection between Plaintiff's allegedly protected activity and the adverse employment action. *Peterson*, 301 F.3d at 1188 (quoting *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)); *see also Leyba v. New Mexico*, 2003 WL 27385080, at *6 (D. N.M. July 25, 2003) ("The employee must have somehow communicated his concerns about unlawful discrimination to the individual who took adverse action against him."). Plaintiff does not allege that she reported her concerns to any individual responsible for the adverse action against her. Thus, Plaintiff's retaliation claim under Title VII fails.

### 3.   Count III, "Breach of Contract," does not state a plausible claim for relief.[9]

Plaintiff claims that "employment documents, handbooks, and other documents and through the use of identifying violations related to the termination has taken this matter outside of 'at will' employment and created an employment contract." *Complaint* at ¶ 53. She specifically

---

[9] Count III does not identify the defendant(s) against which it is asserted and fails to attribute any wrongful acts to any particular individual. Moreover, Count III does not allege the existence of any contract between herself and any of the named individuals. Accordingly, Count III fails to state a claim against any individual defendant.

claims the documents attached to her Complaint as Exhibits 3 and 4 support the existence of an implied employment contract. They do not.[10]

   "State law claims before a federal court on supplemental jurisdiction are governed by state law." *Time Warner Entm't Co., L.P. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1044 (10th Cir. 2004). Thus, Wyoming law applies to Plaintiff's breach of contract claim. "In Wyoming, employment is presumed to be at will." *Finch v. Farmers Co-op. Oil Co. of Sheridan*, 2005 WY 41, ¶ 10, 109 P.3d 537, 541 (Wyo. 2005). "In an at-will employment relationship, either the employer or the employee may terminate the relationship at any time, for any reason or for no reason at all." *Id.* The presumption of at will employment "may be rebutted by a showing that the parties entered into an express or implied-in-fact agreement that the employee would be discharged only with just cause." *Id.* In limited circumstances, "an employment handbook or personnel policies, letters of employments, performance evaluations and an employer's course of dealing may supply terms for an implied-in-fact employment contract." *Id.* at ¶ 15, 109 P.3d at 542. For example, a progressive discipline policy can create an implied-in-fact employment contract. *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo. 2000). However, a "valid, conspicuous, and unambiguous disclaimer notifying employees of their at-will status can preclude a progressive discipline policy from forming an implied contract." *Id.* at 621. Courts determine as a matter of law whether such a disclaimer is sufficiently conspicuous and unambiguous to preclude a discipline policy from forming an implied contract. *Id.* In making that determination, courts examine the disclaimer's prominence and placement, among other factors. *Id.*

---

[10] The Court may consider exhibits attached to a complaint on a motion to dismiss. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

The document attached to Plaintiff's Complaint as Exhibit 3 is the Center's Employee Handbook. The first substantive page of the Handbook consists entirely of a section titled "At Will Employment." Complaint Exhibit 3 at 3. It states that "Nothing contained in this manual is to be considered as an employment contract." *Id.* It goes on to state in a separate paragraph in enlarged, bolded, underlined, and capitalized words that both employees and the Center retain the right to end employment "**AT ANY TIME, FOR ANY REASON OR NO REASON**." *Id.* The final paragraph (again enlarged, bolded, underlined, and capitalized) states that the "employment status is at will) and repeats that both the employee and the Center have the right to discontinue employment "**AT ANY TIME, FOR ANY REASON OR NO REASON**." *Id.* On page 26 of the Handbook there is a section titled "Performance Evaluation" that outlines the Center's policies concerning employee evaluations. *Id.* at 26. Within this section there is a separate paragraph in enlarged, bolded, and capitalized words stating that although performance evaluations are conducted "**THE CENTER CONTINUES TO RESERVE THE RIGHT TO TERMINATE AN EMPLOYEE AT ANY TIME FOR ANY REASON, OR NO REASON. ALL EMPLOYEES REMAIN "AT WILL" EMPLOYEES."** *Id.* On page 27 of the Handbook there is a section titled "Personnel Management" concerning the Center's policies for promotion and transfer. *Id.* at 27. The section begins with a separate paragraph containing enlarged, bolded, capitalized and partially underlined text stating "**DISCHARGE. THE CENTER CONTINUES TO RESERVE THE RIGHT TO TERMINATE ANY EMPLOYEE AT ANY TIME, FOR ANY REASON OR FOR NO REASON. THE CENTER ALONE DECIDES WHETHER AN EMPLOYEE SHOULD BE DISCHARGED."** *Id.*

The document attached to Plaintiff's Complaint as Exhibit 4 is the Center's Supervisors Handbook. The first substantive page of the Handbook contained a section titled (in enlarged and

bolder letters) "**Disclaimer**." Complaint Exhibit 4 at 2. The disclaimer states in a separate

paragraph that "Nothing contained in this handbook is to be considered as an employment contract.

Policies, definitions, benefits, and any other information, written or unwritten, may be changed at

any time and at the Center's sole discretion." *Id.* Pages 10 through 12 contain a "Sample Offer

Letter" provided to candidates for full time positions at the Center. *Id.* at 10-12. Near the end of

the letter, a separate section titled "**At-Will Employment**" states in bolded and capitalized text

that "**THIS OFFER OF EMPLOYMENT IS NOT AN EMPLOYMENT CONTRACT.**

**EMPLOYMENT AT THE CENTER IS AT-WILL. YOU HAVE THE RIGHT TO RESIGN**

**AT ANY TIME FOR ANY REASON OR NO REASON. [THE CENTER] HAS THE RIGHT**

**TO DISCONTINUE YOUR EMPLOYMENT AT ANY TIME FOR ANY REASON OR NO**

**REASON.**" *Id.* at 11-12. The Handbook also contain a section entitled "**CENTER**

**DISCIPLINE**," outlining the Center's "progressive discipline system." *Id* at 32-38. Following the

description of the Center's progressive discipline system, there is a separate disclaimer at the top

of the page in enlarged, bolded, capitalized, and underlined text that states "**THE BUFFALO**

**BILL CENTER OF THE WEST IS AN AT-WILL EMPLOYER, AND CONTINUES TO**

**RESERVE THE RIGHT TO TERMINATE AN EMPLOYEE FOR ANY REASON, OR NO**

**REASON.**" *Id.* at 37. On the same page another paragraph states "Please note that as an at-will

employer, the Buffalo Bill Center of the West reserves the right to terminate an employee for any

reason, or no reason. The Buffalo Bill Center of the West is not required to follow any of these

disciplinary steps, and may proceed directly to termination if it so desires." *Id.* At the bottom of

the same page there is a space for employee and supervisor signatures. *Id.* The final page consists

entirely of an enlarged, bolded, capitalized and underlined disclaimer restating that employment

status is at will and that both the Center and the employee retain the right to end the employment "**AT ANY TIME, FOR ANY REASON OR NO REASON.**" *Id.* at 38.[11]

The disclaimers scattered prominently throughout Exhibits 3 and 4 effectively preclude the existence of an implied employment contract. They are repetitive, prominently located (often in separate paragraphs or even pages), frequently contain headings, and are distinguished from the rest of the text with bolding, underlining, enlargement, and capitalization. Their language is clear and unambiguous. In short, they are designed to attract the reader's attention and notify her in plain terms that the Center can terminate her employment at any time for any reason or no reason at all, regardless of any stated policies. Accordingly, Plaintiff was sufficiently informed that her employment was at will and, as a matter of law, cannot claim the existence of an employment contract from these documents.

To the extent that Plaintiff claims some "other documents" or conduct created an employment contract, the claim still fails. First, "[a]n employee cannot reasonably rely on the conduct or statements of an employer if [s]he has been sufficiently informed that [her] employment is at will." *Andrews v. Sw. Wyo. Rehab. Ctr.*, 974 P.2d 948, 952 (Wyo. 1999). Moreover, the failure to state facts describing "other documents" or conduct that might give rise to an implied contract falls below the standard that a claim be plausible on its face. *Bell Atl. Corp*, 550 U.S. at 570; *Ashcroft*, 556 U.S. at 678.

---

[11] Although they omit this final "At-Will Employment" disclaimer page, the remaining pages of Exhibit 4 restate the same "Center Discipline Section." The pages do not appear to be part of the Supervisors Handbook, as they do not have the heading or pagination used throughout the Supervisors Handbook.

**4. Count V, "Defamation of Character," does not state a plausible claim for relief.**

Under Wyoming law, a statement is defamatory if it: "1) tends to hold the plaintiff up to hatred, contempt, ridicule, or scorn; 2) causes the plaintiff to be shunned or avoided; or 3) tends to injure the individual's reputation as to diminish the esteem, respect, goodwill, or confidence in which he is held." *Stevens v. Anesthesiology Consultants or Cheyenne, LLC*, 2018 WY 45, ¶ 40, 415 P.3d 1270, 1284-85 (Wyo. 2018). In general, a Plaintiff must prove special damages to successfully claim defamation, *i.e.* the Plaintiff must show that the defamatory statement "affect[ed] the plaintiff in some way that is peculiarly harmful to one engaged in [her] trade or profession." *Id.* Certain statements, however, are defamatory on their faces and do not require proof of special damages. Such statements "are those which impute 1) a criminal offense; 2) a loathsome disease; 3) a matter incompatible with business, trade, profession, or office; or 4) serious sexual misconduct." *Id.* Even such statements, however, are not actionable if substantially true. *Tschirgi v. Lander Wyo. State Journal*, 706 P.2d 1116, 1119-20 (Wyo. 1985).

Count V fails to state a plausible claim for relief. The Complaint alleges that "Plaintiff's character and work were being discussed in a negative way to the other organizations"; that Rebecca West and/or other individuals at the [Center] had discussed her termination"; and that the Center "along with the individuals identified herein took the Plaintiff's photos without her knowledge or permission and posted them publicly around the museum with warnings that the Plaintiff had been banned from the [Center] property." *Complaint* at ¶¶ 57, 58-59. The Complaint does not identify who was discussing her "character and work," the content of those "negative" discussions, or with what "other organizations" these "negative" discussions were had. It claims that Rebecca West "discussed her termination" but gives no description of what she said or to whom she said it. As for the "other individuals" who discussed her termination, the Complaint

does not even bother to state who those other individuals might be. Moreover, Plaintiff was, in fact, terminated; thus, discussing that truth cannot give rise to a defamation claim. Similarly, as noted in Exhibit 1 attached to Plaintiff's Complaint, Plaintiff was indeed "banned" from the Center and therefore cannot state a claim for defamation on the basis of photos with warnings noting her banishment. Complaint Exhibit 1 at 2 ("Please note, you will not be allowed back into the Center for any reason until further notice.").

### 5. Count VI, "Intentional Infliction of Emotional Distress," does not state a plausible claim for relief.

To recover for intentional infliction of emotional distress under Wyoming law, "a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the defendant intentionally or recklessly caused the plaintiff to suffer severe emotional harm." *Hoflund v. Airport Golf Club*, 2005 WY 17, ¶ 27, 105 P.3d 1079, 1089 (Wyo. 2005). Extreme and outrageous conduct is not merely that which "is tortious or even criminal," nor that done with the intent to inflict emotional distress or with malice. *Id.* (citing Restatement (Second) of Torts, § 46). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 1090. Instead, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 1089. The court determines, as a matter of law, "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 1090. Further, a terminated employee claiming emotional distress must show emotional distress "above and beyond the normal distress that arises from the loss of a job. *Worley*, 1 P.3d at 630. "The ordinary person who is fired from [her] job might worry about [her] future and [her] ability to pay [her] bills. [She] might also lose sleep over it. But this is the kind of distress with which the ordinary person must be expected to cope." *Id.*

Plaintiff has not set forth well-pled factual allegations supporting her claim of outrageous conduct, or of severe emotional distress. Plaintiff has not described in any detail conduct by the Center or individual defendants that exceeds all bounds of decency. Conclusory allegations of "harassment," "discrimination," "personal vendettas," "conspiring," and "a hostile work environment" do not suffice. *Ashcroft*, 556 U.S. at 678 (a complaint does not suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"). Plaintiff has not alleged any specific conduct by any particular defendant, other than the mere fact of her termination. That is not enough. Moreover, Plaintiff has not described in any way the "severe emotional distress" she claims to have suffered. *Cf. Worley*, 1 P.3d at 630 (citing evidence of diagnosed clinical depression, bouts of crying, remaining in a vegetative state, and diverticulitis as supporting IIED claim). Thus, Count VI fails to state a claim for relief and must be dismissed.

## V.    Conclusion

Plaintiff has not alleged any discriminatory or retaliatory acts making her "Discrimination because of Age/Gender" or "Retaliation for Reporting" claims plausible on their faces. Further, Plaintiff has not exhausted her administrative remedies as to those claims. Nor has she alleged any conduct sufficient to state any claim against any individual Defendant. Likewise, her allegations do not support the existence of an implied employment contract. Nor do they plausibly allege the making of defamatory statements or the intentional infliction of emotion distress.

WHERERFORE Defendants respectfully request that Plaintiff's complaint be dismissed in its entirety.

DATED this 8th day of July, 2021.

DAVIS & CANNON, LLP

/s/ *Catherine M. Young*
Amanda F. Esch (Wyo. State Bar #6-4235)
Catherine M. Young (Wyo. State Bar #7-6089)
P.O. Box 43
Cheyenne, WY  82003
Telephone:  307/634-3210
Fax:  307/778-7118
amanda@davisandcannon.com
catherine@davisandcannon.com

*Counsel for Defendants*
*Buffalo Bill Memorial Association,*
*Kelly Jensen, Rebecca West,*
*Corey Anco, and Melissa Hill*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2021, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing, to the following:

Christopher J. King
P.O. Box 552
Worland, WY 82401
chris@wyoattorney.com

/s/ *Catherine M. Young*
Catherine M. Young