Christopher J. King
WSB 7-4532
PO Box 552
Worland, WY 82401
(307) 347-9801
chris@wyoattorney.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BONNIE SMITH,<br><br>Plaintiff,<br><br>-v-<br><br>BUFFALO BILL MEMORIAL ASSOCIATION, KELLY JENSEN, PETER SEIBERT, REBECA WEST, COREY ANCO, NATHAN HORTON and MELISSA HILL,<br><br>Defendants. | Case No. 0:21-cv-00092 |

## AMENDED COMPLAINT

COMES NOW, the Plaintiff herein, Bonnie Smith, by and through her attorney, Christopher J King of APEX Legal, P.C. And for her *Amended Complaint* states and alleges as follows:

**Jurisdiction, Venue and Related Matters**

1. This Court has jurisdiction of the federal claims herein pursuant to 28 U.S.C. § 1331, 1337 and 1343.

2. Plaintiff is alleging violations of her rights under Title Vii of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

3. This Court has jurisdiction over declaratory actions pursuant to 28 U.S. C. §2201 & 2202.

4. This Court has supplemental jurisdiction over State law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper under 28 U.S.C. § 1391. The violations alleged herein and the factual allegations pertaining to Plaintiff's state law claims occurred within the State of Wyoming or were directed toward the Plaintiff during the course of her employment in Wyoming.

6. The Plaintiff is a bona fide resident of Park County, Wyoming and has been for several years last past.

7. The Defendant, Buffalo Bill Memorial Association ("BBMA") is a licensed business in the state of Wyoming with his primary purpose being educational, not for profit. It owns assets and physical facilities and has its principal place of operation in Park County, Wyoming.

8. The individual Defendants, Peter Siebert, Rebecca West, Corey ANCO, Nathan Horton, and Melissa Hill were or are employed by BBMA and are or were residents of the state of Wyoming at the relevant times herein and were either employees, supervisors or temporary supervisors over the Plaintiff.

### Jurisdictional Requirements for Title VII Claim

9. On or about December 9th, 2019 Plaintiff timely filed a charge of discrimination with the Wyoming Department of Labor, within 300 calendar days after one or more of the alleged unlawful employment practices occurred.

10. In her allegations the plaintiffs alleged discrimination on the basis of sex and age along with retaliation.

11. On or about February 10th, 2021 the Plaintiff received a notice of a Right to Sue Letter from the EEOC.

12. The original *Complaint* filed in this matter followed within 90 days receipt of that notice.

## General Factual Allegations

13. That the Plaintiff began working for the BBMA approximately May 11, 2010 and continued to work for the Defendant, BBMA, until March 28, 2019.

14. Plaintiff is a member of a protected group - female.

15. The Defendant employs approximately 80 people of which approximately half are or were female at the time the Plaintiff was terminated.

16. The Plaintiff held several positions of employment during her tenure with the Defendant. At the time of her discharge, she was a Curatorial Assistant working in the Draper Department. This position begin at an hourly rate of $12.50 an hour and the plaintiff had an annual salary of $41,000 at the time of termination.

17. That Charles Preston PhD was the direct supervisor of the Plaintiff until December 31, 2018 upon his retirement. During the last part of the year of 2018 there was a change over at the BBMA wherein a new CEO by the name of Peter Siebert was hired and Rebecca West was named an advocate whose responsibilities were time clock approvals. The Plaintiff and others at the BBMA were told that she was not a supervisor and Rebecca West confirmed that she was not a supervisor.

18. That the BBMA terminated the Plaintiff's employment upon allegations made by Rebecca West, Corey Anco, Nathan Horton, Kelly Jensen and Melissa Hill and for the claimed reasons set forth in Exhibit (1) appended to the original *Complaint*. It stated that there was an attachment to the disciplinary action form that was not attached at the time and to date it is not known what document the Defendant is referencing.

19. At the time of the Plaintiffs termination Rebecca West was represented as an interim supervisor, however, this was the first, and only time that was relayed.

20. Rebecca West was currently the curator of the Plains Indian Museum and she would attend meetings as a representative of the curatorial department. She is now the Executive Director.

21. The individual who terminated the Plaintiff's employment was Rebecca West a temporary acting supervisor who had a known and stated vendetta against the Plaintiff.

22. But it is not believe that the new CEO knew of the personal vendetta against the Plaintiff at the time of her termination.

23. That the reasons given for the Plaintiff's termination or a complete fabrication. The Plaintiff instead upon information and belief was terminated for the following reasons:

   a. The Plaintiff informed that violations had occurred relating to the handling of artifacts in the Defendant's possession. This included the Plaintiff notifying the proper federal agencies related to the incorrect handling of artifacts. Once it was found out that the Plaintiff had done what she was supposed to do this became a retaliatory firing.

   b. The Defendant has a history of both age and gender discrimination. The Plaintiff while employed experienced both, which shall be more fully set forth herein.

   c. Personal vendetta from the interim supervisor (Rebecca West) of the Plaintiff which was not disclosed to the newly hired CEO.

24. That the Plaintiff has appended to the original C*omplaint* the employee handbook as Exhibit 3. The employee handbook outlines both expectations and procedures and policies it is believe this is the document referenced by the Defendant's termination notice.

25. That the Plaintiff has been in complete compliance with the employee handbook at all times.

26. That during her employment a male employee with less experience was hired and promoted above the Plaintiff and the Defendant took specific actions to discourage her application in favor of the male applicant. This was one instance of discrimination due to her Gender and due to her age. There were additional actions of discrimination and hostile work environment that include the following:

      a.      That the Defendant, BBMA, told the Plaintiff that for her to apply to the newly funded Curatorial Assistant program which was previously funded by a grant that she would have to take a payout from $39,000.00 per year to $36,000.00 per year.

      b.      That Corey Anco, was an applicant for the position. He was younger and male. The emails that were sent related to Corey Anco were that he did not have the essential skills necessary for the position. All skills that Bonnie Smith already possessed.

      c.      That the BBMA hired Corey Anco at the expressed lower rate of pay and then immediately gave him a raise which was above the amount of money that Bonnie Smith was making and above the amount of money that Bonnie Smith was told she would be able to make.

      d.      That Bonnie Smith had requested to be taught how to write grants to improve her position with the Museum and was denied with the stated reason being she was not a male.

      e.      That Bonnie Smith, the Plaintiff, was physically assaulted by Nate Horton. This was reported as he laid hands on her in a violent and aggressive manner. This was reported to Chuck Preston, PhD. Nothing was done in response to this report. When the Plaintiff would late report being afraid to be alone in the vault with Nate Horton this was ignored and she was forced into the situation creating a hostile work environment.

      f.      That in August of 2018 the HR Director, Terry Harley, posted on FaceBook asking if Bonnie Smith, the Plaintiff was a Wiccan. After this question being posed to the Plaintiff the attitudes of people she associated with at BBMA were dramatically different. Upon information and belief, Terry Harley had direct conversations with other individuals related to the Plaintiff's religion which further created a toxic work environment. That there had never been a problem with the Plaintiff's employment until this occurred.

      g.      That any report made about a male employee, whether it be Corey Anco or Nathan Horton was ignored and it was described as them being "Chuck's Boys."

  h. That there was an obvious difference between the violations and the repercussions that occurred if it involved a male employee.  These include but are not limited to the following:

   i. Corey Anco was manhandling priceless pieces of art not in compliance with the handling procedures of the Museum, including not wearing gloves.  This was reported and nothing was done.

   ii. In December of 2016 Corey Anco went to Chicago to take possession of items in a collection.  While there he did not obtain any receipts; he was not required to follow museum policy and he even went to the widow's home and took items for himself which is specifically against museum policy.  Nothing occurred to Corey Anco.

   iii. As set forth more fully below Corey Anco was involved with meeting with a looter and nothing occurred to him.

   iv. That Corey Anco performed destructive sampling of federally owned materials.   When this was reported nothing occurred.

  i. That Peter Siebert made it very clear that the BBMA was wanting to work with younger people and that he had Beverly Perkins create a "young person club."  Nothing like this was offered to the individuals who were not a "young person."

  j. That Bonnie Smith, the Plaintiff, wrote an email regarding the interactions with Nathan Horton to HR and still nothing was done and she was forced to go to the vault with him.

  k. That after Chuck Preston and the BBMA hired Corey Anco; Chuck knew it was wrong and he tried to make efforts to change the title.  He informed the Plaintiff that the Plaintiff could not be an Assistant Curator without a Master's Degree.  However, this was not true as Melissa Hill is or was an Assistant Curator with a Bachelor's Degree.

27.     All of the actions set forth above were reported and based on the reports the Plaintiff was retaliated against. She was discriminated against due to her age, gender and religion and a hostile work environment was created.

28.     Plaintiff has never had poor performance reviews.

29.     Plaintiff has very little interaction with volunteers as such the reason given for termination of the complaint being made by a volunteer was shocking to the Plaintiff. Plaintiff spoke to the few individuals who she does have contact with and I was worried that there was no complaint made by any volunteer.

30.     Plaintiff does not have a lot of interaction with other employees and the allegation of the Plaintiff spending an exorbitant amount of time while on the clock chatting or gossiping was also shocking to the Plaintiff. The Plaintiff investigated this and found out that this was also not reported.

31.     The Plaintiff has always stayed in her area of work and has performed her work tremendously throughout her employment at BBMA. The allegation that she had contempt and was not staying in her lane of work was inexplicable. This was further investigated by the Plaintiff and found that the entire allegation came from the interim supervisor Rebecca West and the other individuals named herein who do not like the Plaintiff and who made up the allegation to terminate her.

32.     Corey ankle was a younger an experienced male employee has set forth above has never held a position until he was hired by the BBMA. Corey Anco's grief with the Plaintiff stems from the following which was described above and is more particularly described as follows:

a.      Reports were made about complete an attitude and lack of care and his work product.

b.      Reports are made about his miss handling of artifacts and damaging sampling techniques which had to be reported to the appropriate federal agencies.

    c.    Reports were made about his meeting with a looter at the Marquette Mammoth site. When this was discovered is subjected BBMA to possible federal charges.

    d.    After he met with the looter at the Marquette site he showed pictures to the Plaintiff of various artifacts. Plaintiff reported this to Kierson Crime the Archeologist for the BLM at the Cody office.

33. Melissa Hill is in charge of the raptor program. It was previously believed that Melissa Hill had a good reputation. However, it was learned that once she found an opportunity to try and terminate the Plaintiff, she engaged in conspiring with the other named individuals herein to make false allegations against the Plaintive to have her fired.

34. Nathan Horton was a coworker of the Plaintiff. The Plaintiff had previously told Chuck Preston PhD and Terry Harley Director of human resources about being uncomfortable around Nathan Horton because he was aggressive, hostile and made a hostile work environment as set forth previously. This was all reported and then it was learned that because of these allegations Nathan Horton conspired with the other names individuals to make false allegations against the Plaintiff.

35. The Plaintiff has never done or taken any action outside her job description. Rebecca West again made up allegations that were not accurate to state that the Plaintiff was not acting in a professional manner.

36. The Plaintiff has numerous letters of commendation and was never disciplined until Rebecca West became the interim supervisor.

37. The Plaintiff's concerns have been brought to the supervisors in the chain of command.  Each and every supervisor up to the Director of the BBMA has by their actions or inactions approved or ratify the termination of the Plaintiff and the Discrimination conducted by the BBMA and their employees.

**COUNT I Discrimination because of Age / Gender and Creation of Hostile Work Environment**

38. Plaintive has passed over for advancement due to her age.

39. Plaintiff was passed over for advancement due to her gender.

40. BBMA hired a younger male had no experience and put him in a position that he was not qualified for.

41. The BBMA specifically made an effort to discourage the advancement of the Plaintiff due to the expressed desires to have male employees and younger employees.

42. BBMA changed the amount of pay that the Plaintiff would receive if she had received the position in an effort to discourage her application. After the younger, less experienced male was hired he was immediately given a raise above the amount that the Plaintiff was told she would be able to make.

43. This was all due to the Plaintiff being female and / or being older.

44. That the job performance of the younger male was very substandard and included the destruction of federally owned material due to inappropriate sampling and not following policy or protocol.

45. That when it was reported by the Plaintiff to the proper federal agencies and within the BBMA the Plaintiff was retaliated against and terminated.

46. That the Plaintiff further reported concerns related to Nathan Horton and his physical violence towards the Plaintiff. This was reported not only to her direct supervisor but also to the human resources department. Nothing was done and the Plaintiff was forced to be alone with Nathan Horton.

47. That these actions and inactions of the BBMA and the Supervisors constituted a hostile work environment wherein the Plaintiff was concerned of physical harm and wherein the Plaintiff was subjected to the harassment and outright invasions of her privacy in her job.

48. That the inclusion of her religion into her work and meeting conducted related to her being a Wiccan constituted a hostile work environment.

49.     That the conduct was sufficiently severe that a reasonable person in Plaintiff's position would have found the work environment to be hostile.

50.     That the Plaintiff's termination letter references not "staying in her lane" and acting professional.  Both of these allegations are related to the Plaintiff's actions in making a proper report.

### COUNT II Retaliation for Reporting

51.     That the allegations set forth above were reported. The conduct of an inexperienced younger male who would allow destructive sampling on federally owned property was brought to the attention of the Plaintiff's supervisors.

47.     The employee handbook outlines both expectations and procedures and policies. The Plaintiff has been in complete compliance with the employee handbook at all times.

48.     The Plaintiff was terminated from employment related to this retaliation.

49.     The actions of management of BBMA in retaliating against the Plaintiff and in causing termination from employment for engaging in protected activities were conducted knowing that they violated Federal law governing retaliation.

50.     That BBMA has in the past faced legal action for retaliating against Plaintiffs in similar circumstances including for retaliating related to sex discrimination, sexual harassment, age discrimination, reporting missing artifacts, theft and for reporting proper reporting.

### COUNT III Breach of Contract

51.     That BBMA has used an employee handbook and additional documents to create an implied employment contract with the Plaintiff.  Exhibit 3 the Employee Handbook and Exhibit 4 the Supervisor's Handbook were appended to the original C*omplaint* and are incorporated herein by this reference.

52.    That BBMA in setting forth the reasons for termination identified violations of policy.

53.    That BBMA through both the use of employment documents, handbooks, and other documents and through the use of identifying violations related to the termination has taken this matter outside of "At will" employment and created an employment contract and have violated their own policies and procedures.

54.    That BBMA in terminating the employee violated the employee's employment contract.

55.    That BBMA has caused damages to the Plaintiff in the termination of her employment.

### COUNT V. Defamation of Character

56.    That upon termination from BBMA it was learned that the Plaintiff's character and work were being discussed in a negative way to other organizations.

57.    Plaintiff was engaged to give discussions and further speak about research she has done.

58.    The Plaintiff learned that Rebecca West and other individuals at BBMA had discussed her termination.

59.    BBMA along with the individuals identified herein took the Plaintiff's photos without her knowledge or permission and posted them publicly around the museum with warnings that the Plaintiff had been banned from the BBMA property.

60.    That these actions are in direct retaliation and have severely damaged the reputation of the Plaintiff within her professional capacity and damaged here ability to find work.

### COUNT VI  Intentional Infliction of Emotional Distress

61.   That the actions taken by the employees of BBMA named personally herein and then ratified and approved by BBMA were all willful, done purposely and with malice aforethought.

62.   That the Defendant's conduct herein is extreme, outrageous, and manipulative.

63.   That the Defendants conduct has caused severe emotional distress to the Plaintiff.

### Additional Allegations

64.   All of the actions of BBMA, Rebecca West, Kelly Jensen, Corey Anco, Nathan Horton, Melissa Hill and Peter Siebert were intentional and were conducted with reckless disregard of the consequences and under such circumstances and conditions that a reasonable person would know, or have reason to know, that conduct would, in a high decree of probability result in substantial harm to another.

65.   The Defendant corporation should be responsible for punitive damages under this *Amended Complaint* because the actions complained of were either (1) the actions of the corporation itself (2) the actions of a supervisor acting in a managerial capacity and in the scope of employment, or (3) the actions complained of by the supervisor were ratified by the company in failing to respond to the Plaintiff's complaints.

66.   All documents appended to the original *Complaint* are incorporated herein by reference and were originally filed as pages 11 - 92 of the original *Complaint.*

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant and award her:

1.   Back Pay;
2.   Front Pay;
3.   Other future damages;
4.   Liquidated damages as allowed by law;
5.   Pecuniary and non-pecuniary compensatory damages;

6.	Other compensatory damages including economic losses allowed by law;

7.	Non-economic damages for pain, suffering, loss of enjoyment of life;

8.	Punitive or exemplary damages for Plaintiff's state law claims and Title VII claims;

9.	Attorney's fees and costs in the action including expert witness fees as allowed by law.

Dated September 20, 2021

APEX Legal, P.C.

*Christopher J. King*
Christopher J. King
WSB 7-4532

CERTIFICATE OF SERVICE

I, Christopher J. King hereby certify that on September 20, 2021, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Amanda F. Esch
Catherine M. Young
PO Box 43
Cheyenne, WY 82003
amanda@davisandcannon.com
catherine@davisandcannon.com

*Christopher J. King*
Christopher J. King
