Amanda F. Esch (Wyo. State Bar #6-4235)
Catherine M. Young (Wyo. State Bar #7-6089)
DAVIS & CANNON, LLP
P.O. Box 43
Cheyenne, WY 82003
Telephone: 307/634-3210
Fax: 307/778-7118
amanda@davisandcannon.com
catherine@davisandcannon.com

*Counsel for Defendants*
*Buffalo Bill Memorial Association,*
*Kelly Jensen, Rebecca West,*
*Corey Anco, and Melissa Hill*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| BONNIE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 21-cv-00092 |
| v. | ) | |
| | ) | |
| BUFFALO BILL MEMORIAL | ) | |
| ASSOCIATION, KELLY JENSEN, | ) | |
| PETER SEIBERT, REBECCA WEST, | ) | |
| COREY ANCO, NATHAN HORTON | ) | |
| And MELISSA HILL, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Buffalo Bill Memorial Association (the Center), Kelly Jensen, Rebecca West,

Corey Anco, and Melissa Hill, by and through counsel, Davis & Cannon, LLP, submit this brief

in support of their *Motion to Dismiss Amended Complaint* pursuant to F.R.C.P. 12(b)(6).

**I.     Introduction**

The Buffalo Bill Memorial Association operates the Buffalo Bill Center of the West,

comprised of five museums dedicated to Western culture, art, and history. The Center employed

Plaintiff in various positions between May 2010 and March 2019, most recently as a Curatorial Assistant in the Draper Natural History Museum. The Center terminated Plaintiff's employment on March 28, 2019, due to her years-long pattern of engaging in unproductive gossip, distracting others from their work, and insubordination. In response, Plaintiff filed a perfunctory Charge of Discrimination with the Equal Employment Opportunity Commission (the EEOC), *see* **Exhibit 1**,[1] and, then, this lawsuit. Defendants moved to dismiss Plaintiff's original Complaint in its entirety. *See* ECF Docs. 6, 7, and 12. This Court granted Defendants' motion, dismissed all of Plaintiff's claims without prejudice, and granted Plaintiff leave to amend her Complaint. *See* ECF Doc. 13. Plaintiff filed her Amended Complaint on September 20, 2021. *See* ECF Doc. 14. Plaintiff's Amended Complaint is substantially similar to her original Complaint and once again fails to state any claims upon which relief can be granted. The Court should dismiss it again, this time with prejudice.

---

[1] "[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the documents authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Plaintiff refers to the Charge in her Amended Complaint. *Amended Complaint* at ¶¶ 9-12. And, although no longer considered jurisdictional, filing a charge of discrimination with the EEOC remains central to a Title VII claim because failing to do so is an affirmative defense to bringing a Title VII suit. *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1185-86 (10th Cir. 2018) (overruling precedent holding that filing EEOC charge of discrimination is jurisdictional); *Khalifah v. Brennan*, 2020 WL 1028299, at * 3 (D. Kan March 3, 2020) (considering Plaintiff's EEOC charge without converting motion to dismiss to motion for summary judgment because Plaintiff referred to it in complaint and it was central to plaintiff's Title VII claim); *Simmons v. Sunrise Sr. Living Serv., Inc.*, 2020 WL 1244655, at *4 fn. 3 ("The court may consider plaintiff's EEOC charge because plaintiff incorporated it into her Complaint and the parties do not dispute the documents authenticity."). Thus, the Court may consider the Charge without converting this motion to dismiss to a motion for summary judgment.

## II.    Background[2]

Plaintiff began working for the Center in May 2010. *Amended Complaint* at ¶ 13. She held various positions during her employment with the Center, most recently as a Curatorial Assistant in the Draper National History Museum, until she was fired on March 28, 2019. *Id.* at ¶¶ 13, 16. Plaintiff claims she was fired in retaliation for reporting the incorrect handling of artifacts to federal agencies; based on "a history of both age and gender discrimination"; and due to Rebecca West's "personal vendetta" against her. *Id* at ¶ 23(a)-(c). Plaintiff also claims that "a male-employee with less experience was hired and promoted above [her] and the Defendant took specific actions to discourage her application in favor of the male applicant." *Id.* at ¶ 26. Those "specific actions" include that the Center told her that she would have to take a pay cut "for her to apply to the newly funded Curatorial Assistant program"; that the Center hired the younger male employee, Corey Anco, at the lower rate of pay but then immediately gave him a raise to a higher amount than Plaintiff's salary; and that she was falsely informed that she needed a master's degree to qualify for the position. *Id.* at ¶ 26.a, c, k. According to Plaintiff, after Mr. Anco was hired he mishandled artwork, took actions expressly contrary to museum policy, met with a looter at an archaeological site, and conducted destructive sampling. *Id.* at ¶ 26.h.i-iv and 32.a-d. Plaintiff claims the Center's failure to discipline Mr. Anco for these acts demonstrates that "there was an obvious difference" between how male and female employees were disciplined. *Id.* at 26.h.

Plaintiff further alleges that she "requested to be taught how to write grants to improve her position" at the Center but that this request "was denied with the stated reason being she was not a male." *Id.* at ¶ 26.d. She also claims that she was "physically assaulted by Nate Horton" and

---

[2] The facts cited in this section are drawn from Plaintiff's Amended Complaint and are assumed to be true only for purposes of this 12(b)(6) motion.

reported that he "laid hands on her in a violent and aggressive manner." *Id.* at ¶ 26.e. "Nothing was done in response to this report," and Plaintiff continued to be "forced" to be alone with him. *Id.* Allegedly, when Plaintiff reported Corey Anco's ineptitude and mishandling of artifacts or Nate Horton's assault she was "ignored" and heard "it was described as them being 'Chuck's Boys.'" *Id.* at ¶ 26.g. She also claims Peter Seibert "made it very clear that the [Center] was wanting to work with younger people and that he had Beverly Perkins create a "young person club," which was not offered "to the individuals who were not a young person." *Id.* at ¶ 26.i.

Plaintiff states that she complied with the Center's Employee Handbook "at all times"; that she "never had poor performance reviews"; and that the reasons given for her termination were fabricated by "Rebecca West and the other individuals individually named" in this lawsuit, pursuant to a conspiracy among them. *Id.* at ¶¶ 25, 28, 31, 33-35.

### III.   Standard of Review

Rule 8 of the Federal Rules of Civil Procedure requires pleadings to include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" F.R.C.P. 8(a)(2). A defendant may move to dismiss a complaint that fails to demonstrate the plaintiff is entitled to the relief requested. F.R.C.P. 12(b)(6). In determining whether a complaint fails to state a claim for relief under Rule 12(b)(6), the Court is to accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

The standard to survive a motion to dismiss in federal court is well known: a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action

help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). A claim is facially plausible when the allegations support a reasonable inference that the defendant is liable. *Mayfield v. Bathards*, 826 F.3d 1252, 1255 (10th Cir. 2016). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.*

Under Rule 15 of the Federal Rules of Civil Procedure, the Court has discretion to grant a party leave to amend a complaint that fails to state a claim for relief. F.R.C.P. 15(a)(2). Generally, the Court "should freely give leave when justice so requires." *Id.* However, the Court may withhold leave to amend where amendment would be futile. *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010). Amendment is futile when it is "'patently obvious' that the plaintiff could not prevail on the facts alleged." *Id.* at 1314-15. Further, courts have denied leave to amend where a Plaintiff has failed to cure defects in previous amendments. *Id.*; *see also e.g., Loos v. Immersion Corp.*, 762 F.3d 880, 890-91 (9th Cir. 2014) (affirming denial of leave to amend where the court identified why plaintiff's original theory was deficient but the plaintiff essentially re-pled the same facts and legal theories in amended complaint); *Standard v. Nygren*, 658 F.3d 792, 798-99 (7th Cir. 2011) (affirming denial of leave to file second amended complaint in light of rampant grammatical, syntactical, and typographical errors contributing to overall sense of unintelligibility, compounded by vague, confusing articulation of the factual and legal basis for the claims and a general "kitchen sink" approach to pleading the case).

## IV.    Argument

**1.     The Court should dismiss Count I, "Discrimination because of Age/Gender and Creation of Hostile Work Environment."**

Once again, the theory underlying Plaintiff's claim of "Discrimination because of Age/Gender and Creation of Hostile Work Environment" appears to potentially rest on several divergent theories of liability. Once again, the claim fails for a variety of reasons.

### a.    To the extent that Count I advances a discriminatory failure to promote claim, it should be dismissed (again).

The Court's order dismissing Plaintiff's Complaint was clear that "administrative remedies as to a claim of discriminatory failure to promote due to age or gender have not been exhausted." *See* ECF Doc. 13 at 7-8. Accordingly, to the extent that Plaintiff is attempting to revive a failure to promote claim, the claim should be dismissed.

### b.    To the extent that Count I advances a discrimination claim on the basis of age, it should be dismissed.

Plaintiff's Amended Complaint again fails to allege the most basic of information required to sustain a claim of discrimination based on age: that she is a member of a protected class under the Age Discrimination in Employment Act (ADEA), i.e. age forty or older. 29 U.S.C. § 631. Accordingly, Plaintiff fails to state a claim under the ADEA, and any allegations relating to age discrimination should be disregarded.

### c.    To the extent that Count I advances a pattern-or-practice claim, it should be dismissed.

The Plaintiff makes conclusory allegations that "[t]he Defendant has a history of both age and gender discrimination." *Amended Complaint* at ¶ 26.b. To the extent that this allegation is an attempt to claim a pattern or practice of discrimination, the attempt fails. To state a prima facie case of a pattern or practice of discrimination, the Plaintiff must show that "unlawful

discrimination has been a regular procedure or policy followed by an employer." *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001). "An individual may believe—and thus allege— that an employer's treatment of him is part of a pattern and practice of discrimination. But without *specific* allegations of class-wide discrimination such vague claims by individual plaintiffs are not enough to alert a defendant that class claims are on the horizon." *See McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 731 (10th Cir. 2011) (emphasis in original). The allegations in the Amended Complaint focus on discrete discriminatory acts against the Plaintiff. There are no specific allegations concerning systemic, company-wide discrimination. Accordingly, Plaintiff fails to state a pattern-or-practice claim. Further, Plaintiff failed to exhaust her administrative remedies as to any pattern-or-practice claim. *See* **Exhibit 1**; ECF Doc. 13 at pp. 6-7 (discussing Plaintiff's failure to exhaust administrative remedies).

### d.  Count I still fails to state a plausible claim for relief.

Despite amendment, the allegations supporting Plaintiff's claim of "Discrimination because of Age/Gender and Creation of Hostile Work Environment" do not state a plausible claim for relief. A plaintiff can prove a violation of Title VII or the ADEA[3] by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 799 fn.7, *abrogated on other grounds* (noting that courts apply the same analysis to Title VII and ADEA claims). According to *McDonnell Douglas,* the Plaintiff must first prove a prima facie case of

---

[3] Plaintiff again presents Count I as some sort of hybrid gender and/or age based discrimination claim (with some cryptic references to religion mixed in). Title VII and the ADEA are separate statutes, giving rise to distinct causes of action, and it is not clear under which statute her claim arises. To the extent that Plaintiff is attempting to state a Title VII "sex-plus" claim, she has failed to plausibly allege it. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1046-47 (10th Cir. 2020) ("a female sex-plus plaintiff must show that her employer treated her unfavorably relative to a male employee who also shares the 'plus-'characteristic.").

discrimination. *Morman v. Campbell Cty. Mem'l Hosp.*, 632 Fed. App'x 927, 933 (10th Cir. 2015). If she does so, the burden "shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant does so, "the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.*

While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, courts evaluate a discrimination claim's plausibility "by considering the prima facie case of discrimination that she would need to prove" at trial. *Id.* To establish creation of a hostile work environment, a Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998). "But severity and pervasiveness are not enough"— the Plaintiff must also show "that she was the object of harassment *because of her gender*." *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (emphasis in original). Further, "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002). Thus, "an unlawful employment practice that constitutes a hostile work environment . . . occurs over a series of days or years." *Noland v. City of Albuquerque*, 779 F. Supp.2d 1214, 1227 (D. N.M. 2011).

Once again, Plaintiff makes a number of conclusory allegations that the Court should disregard. *Khalik v. United Air Lines*, 671 F.3d 118, 1193 (10th Cir. 2012). Those allegations include that: (1) the Center "has a history of both age and gender discrimination," both of which the Plaintiff claims to have "experienced"; (2) "there was an obvious difference between the

violations and the repercussions that occurred if it involved a male employee";[4] (3) "she was discriminated against due to her age, gender and religion, and a hostile work environment was created"; (4) "Plaintive [(*sic*)] has [(*sic*)] passed over for advancement due to her age"; (5) Plaintiff was passed over for advancement due to her gender"; (6) the Center's actions were "all due to Plaintiff being female and/or being older"; (7) the "actions and inactions of the [Center] and the Supervisors constituted a hostile work environment"; and (9) "the conduct was sufficiently severe that a reasonable person in Plaintiff's position would have found the work environment to be hostile." S*ee Amended Complaint* at ¶¶ 23.b, 26.h. i-iv, 27, 38, 43, 47, 49.

Other allegations have no relevance to a gender and/or age discrimination claim. For instance, Plaintiff alleges that "the inclusion of her religion into her work and meeting conducted related to her being a Wiccan constituted a hostile work environment." *Id.* at ¶ 48. This baffling allegation presumably relates to the Center's HR Director having "posted on Facebook asking if [] the Plaintiff was a Wiccan" and the "dramatically different" "attitudes of people she associated with at [the Center]" after it was posted. *Id.* at ¶ 26.f. Count I is cast as a "Discrimination because of Age/Gender" claim. Someone asking about someone else's religion has no relevance to such a claim and should be disregarded.

In addition, Plaintiff claims that Rebecca West was "a temporary acting supervisor who had a known and stated vendetta against the Plaintiff" that was unknown to the Center's CEO. *Id.* at ¶21, 23.c. The Amended Complaint does not describe why Rebecca West had a vendetta against

---

[4] As an example of the "obvious difference" between repercussions male employees faced, Plaintiff relies on allegations that Mr. Anco was not disciplined for "manhandling priceless pieces of art," taking actions expressly contrary to museum policy, meeting with a looter at an archaeological site, or conducting destructive sampling. *Amended Complaint* at ¶ 26.h.i-iv. There are no allegations concerning how females were disciplined for similar conduct. Thus, the Amended Complaint does not plausibly allege disparate treatment.

Plaintiff or what it entailed, much less allege that it arose from discrimination on the basis of sex or age. Similarly, Plaintiff claims that allegations that Plaintiff "had contempt and was not staying in her lane of work" was made up by "Rebecca West and the other individuals named herein who do not like the Plaintiff. *Id.* at ¶ 31, 33, 34, 35. Once again, the Amended Complaint does not allege that the dislike of "other individuals" who made up allegations about her was based on her sex or age. Further, Plaintiff claims that Nathan Horton physically assaulted her "as he laid hands on her in a violent and aggressive manner." *Id.* at ¶ 26.e. Even accepting this novel allegation as true, the Amended Complaint contains no plausible claim that it occurred as a result of discrimination based on gender and/or age. *Chavez*, 397 F.3d at 833. Likewise, Plaintiff has not alleged any facts linking her reports about her younger male co-worker's ineptitude and mishandling of artifacts to gender and/or age-based discrimination. Accordingly, all allegations related to Mr. Anco's job performance should also be disregarded.

Striking those conclusory and irrelevant allegations leaves us with the following: (1) Plaintiff is female; (2) Plaintiff complied with the Center's employee handbook; (3) Plaintiff never had poor performance reviews and performed her work satisfactorily; (4) an inexperienced and incompetent male employee who was younger than Plaintiff was hired and promoted above Plaintiff; (5) the Center informed the Plaintiff that she would have to take a pay cut to apply for the position filled by the younger male employee; (6) the Center hired the younger male at the lower rate of pay but then immediately gave him a raise to a higher amount than Plaintiff's salary; (7) the Plaintiff "requested to be taught how to write grants to improve her position with the Museum and was denied with the stated reason being she was not a male; (8) the Plaintiff was falsely informed by Chuck Preston that she needed a master's degree to qualify for the position filled by the younger male; (9) "that any report made about a male employee, whether it be Corey

Anco or Nathan Horton was ignored and it was described as them being 'Chuck's Boys'"; (10) Plaintiff had very little interaction with volunteers and "was worried that there was no complaint made by a volunteer"; (11) Plaintiff did not have a lot of interaction with other employees and "found out that this was also not reported"; and (12) Plaintiff was terminated. *Amended Complaint*, ¶ 14, 22, 25, 26, 26.a, 26.c., 26.d., 26.g., 26.i, 26.k,  28, 29, 30, 31, 33, 34.

These allegations do not sufficiently allege a violation of Title VII or the ADEA. As noted, Plaintiff's failure to promote claim is barred by her failure to exhaust administrative remedies. Even assuming that allegations related to her non-promotion can provide some context for Plaintiff's hostile work environment claim, *see Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003), the totality of the allegations do not rise to the level of severity or pervasiveness required for such a claim.

"An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quotation omitted). Mere teasing, offhand comments, and isolated incidents do not suffice, even if they "would objectively give rise to bruised or wounded feelings." *Id.* "A plaintiff does not make a sufficient showing of a pervasively hostile work environment "by demonstrating a few isolated incidents of sporadic slurs. Instead, there must be a steady barrage of opprobrious comments." *Id.* at 666 (alterations omitted). Referring to male employees as "Chuck's Boys," refusing to teach Plaintiff to write grants supposedly because she is female, and hiring a younger male employee for a position to which the Plaintiff felt entitled simply do not rise to that level. *Compare id.* (concluding there was no severe or pervasive harassment where a male surgeon twice hit a female nurse on the head, threw bloody heart tissue at her that struck her leg, told her to "get her ass in gear," and made repeated comments about her incompetence) and *Sprague v.*

*Thorn Americas, Inc.*, 129 F.3d 1355, 1365 (10th Cir. 1997) (concluding that supervisor telling female employee that she "really needed to undo [her] top button"; discussing PMS and how women act "at that time of the month" with her; putting his arm around her and looking down her dress; and telling her that her use of the term "neck chains" sounded "kinky" did not rise to the level of severe or pervasive harassment) *with Chavez*, 397 F.3d at 832-34 (concluding that harassment was severe and pervasive where the plaintiff was subjected to numerous sexual propositions and multiple incidents of hostile and physically threatening conduct over a long period of time). Plaintiff has not plausibly alleged severe and pervasive harassment and her claim should be dismissed with prejudice. *See Cohen*, 621 F.3d at 1313 (stating that failure to cure deficiencies in pleadings previously allowed can justify withholding leave to amend).

### e. To the extent that Count I is asserted against any individual, the claim fails as a matter of law and should be dismissed as to the individual defendants.

Despite bringing claims against both the Center and several individual employees of the Center, Plaintiff's Amended Complaint still does not identify which Counts are asserted against which defendants, and largely fails to allege acts undertaken by any individual. The only acts attributed to any particular individual are that Corey Anco performed his job poorly and was not qualified for the position that Plaintiff felt entitled to, that Rebecca West had a "personal vendetta" against her, that Nathan Horton assaulted her, and that Peter Seibert caused a "young person's club" to be created.

These allegations do not plausibly allege that any individual discriminated against the Plaintiff on the basis of her gender/age. Moreover, "[t]he relief available under Title VII is against the employer, not the individual employees whose actions would constitute a violation of the Act." *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996). "[T]he proper method for a plaintiff to recover under Title VII is by suing the employer," either by naming the employer directly or by

naming supervisory agents of the employer in their official capacities as agents of the employer. *Id.* Thus, to the extent that Count I is asserted against any defendant in his or her individual capacity, the claim must be dismissed.

**2.      Count II, Retaliation for Reporting, does not state a plausible claim for relief and should be dismissed with prejudice.**

The Court's previous order dismissing Plaintiff's Complaint was clear that "Plaintiff's reports regarding her inexperienced co-worker who destroyed federal property were not in opposition to a practice made unlawful by Title VII" and therefore did not constitute protected opposition. *See* ECF Doc. 13 at 10. Nevertheless, Plaintiff once again premises her retaliation claim on those same reports. *Amended Complaint* at ¶¶ 51-50.[5]  Accordingly, the Court should dismiss Count II (again).

This time, however the dismissal should be with prejudice. The Court's order dismissing Plaintiff's original Complaint was clear "the Plaintiff's reports regarding her inexperienced co-worker who destroyed federal property were not in opposition to a practice made unlawful by Title VII" and explained that only protected opposition to discrimination based on race, color, religion, sex, or national origin can establish the first element of a prima facie retaliation claim. *Order on Defendants' Motion to Dismiss* at 10. Nevertheless, Plaintiff continues to premise her retaliation claim on reports unrelated to discrimination—in a jumbled pleading rife with grammatical, syntactical, and typographical errors. *See, Loos*, 762 F.3d at 890-91; *Standard*, 658 F.3d at 798-99. The Court should deny her a third bite at the apple.

---

[5] Plaintiff's Amended Complaint is incorrectly numbered. This citation refers to the five paragraphs under the heading "COUNT II Retaliation for Reporting."

3.      **Count III, Breach of Contract, does not state a plausible claim for relief and should be dismissed with prejudice.**[6]

Plaintiff's Amended Complaint does not allege any new facts or theories supporting her breach of contract claim. Accordingly, Defendants restate the argument from their first motion to dismiss with minor modifications:

Plaintiff claims that "employment documents, handbooks, and other documents and through the use of identifying violations related to the termination has taken this matter outside of 'at will' employment and created an employment contract." *Amended Complaint* at ¶ 53. She specifically claims the documents attached to her original Complaint as Exhibits 3 and 4 support the existence of an implied employment contract. They do not.[7]

"State law claims before a federal court on supplemental jurisdiction are governed by state law." *Time Warner Entm't Co., L.P. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1044 (10th Cir. 2004). Thus, Wyoming law applies to Plaintiff's breach of contract claim. "In Wyoming, employment is presumed to be at will." *Finch v. Farmers Co-op. Oil Co. of Sheridan*, 2005 WY 41, ¶ 10, 109 P.3d 537, 541 (Wyo. 2005). "In an at-will employment relationship, either the employer or the employee may terminate the relationship at any time, for any reason or for no reason at all." *Id.* The presumption of at will employment "may be rebutted by a showing that the parties entered into an express or implied-in-fact agreement that the employee would be discharged only with just cause." *Id.* In limited circumstances, "an employment handbook or personnel

---

[6] The Court previously dismissed Plaintiff's breach of contract, defamation, and intentional infliction of emotional distress claims without prejudice because it dismissed all of Plaintiff's federal claims. Should the Court dismiss all of Plaintiff's federal claims again, it should do so on the same basis, although this time with prejudice. However, should the Court conclude that any of Plaintiff's federal claims survive, it should nevertheless dismiss Plaintiff's state law claims for the reasons stated in sections IV.3 through 5 of this brief.

[7] The Court may consider exhibits attached to a complaint on a motion to dismiss. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

policies, letters of employments, performance evaluations and an employer's course of dealing may supply terms for an implied-in-fact employment contract." *Id.* at ¶ 15, 109 P.3d at 542. For example, a progressive discipline policy can create an implied-in-fact employment contract. *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo. 2000).   However, a "valid, conspicuous, and unambiguous disclaimer notifying employees of their at-will status can preclude a progressive discipline policy from forming an implied contract." *Id.* at 621. Courts determine as a matter of law whether such a disclaimer is sufficiently conspicuous and unambiguous to preclude a discipline policy from forming an implied contract. *Id.* In making that determination, courts examine the disclaimer's prominence and placement, among other factors. *Id.*

Exhibit 3 is the Center's Employee Handbook. The first substantive page of the Handbook consists entirely of a section titled "At Will Employment." Complaint Exhibit 3 at 3. It states that "Nothing contained in this manual is to be considered as an employment contract." *Id.* It goes on to state in a separate paragraph in enlarged, bolded, underlined, and capitalized words that both employees and the Center retain the right to end employment "**AT ANY TIME, FOR ANY REASON OR NO REASON**." *Id.* The final paragraph (again enlarged, bolded, underlined, and capitalized) states that the "employment status is at will) and repeats that both the employee and the Center have the right to discontinue employment "**AT ANY TIME, FOR ANY REASON OR NO REASON**." *Id.*   On page 26 of the Handbook there is a section titled "Performance Evaluation" that outlines the Center's policies concerning employee evaluations. *Id.* at 26. Within this section there is a separate paragraph in enlarged, bolded, and capitalized words stating that although performance evaluations are conducted "**THE CENTER CONTINUES TO RESERVE THE RIGHT TO TERMINATE AN EMPLOYEE AT ANY TIME FOR ANY REASON, OR NO REASON. ALL EMPLOYEES REMAIN "AT WILL" EMPLOYEES.**" *Id.* On page

27 of the Handbook there is a section titled "Personnel Management" concerning the Center's policies for promotion and transfer. *Id.* at 27. The section begins with a separate paragraph containing enlarged, bolded, capitalized and partially underlined text stating "**DISCHARGE. THE CENTER CONTINUES TO RESERVE THE RIGHT TO TERMINATE ANY EMPLOYEE AT ANY TIME, FOR ANY REASON OR FOR NO REASON. THE CENTER ALONE DECIDES WHETHER AN EMPLOYEE SHOULD BE DISCHARGED.**" *Id.*

Exhibit 4 is the Center's Supervisors Handbook. The first substantive page of the Handbook contained a section titled (in enlarged and bolder letters) "**Disclaimer**." Complaint Exhibit 4 at 2. The disclaimer states in a separate paragraph that "Nothing contained in this handbook is to be considered as an employment contract. Policies, definitions, benefits, and any other information, written or unwritten, may be changed at any time and at the Center's sole discretion." *Id.* Pages 10 through 12 contain a "Sample Offer Letter" provided to candidates for full time positions at the Center. *Id.* at 10-12. Near the end of the letter, a separate section titled "**At-Will Employment**" states in bolded and capitalized text that "**THIS OFFER OF EMPLOYMENT IS NOT AN EMPLOYMENT CONTRACT. EMPLOYMENT AT THE CENTER IS AT-WILL. YOU HAVE THE RIGHT TO RESIGN AT ANY TIME FOR ANY REASON OR NO REASON. [THE CENTER] HAS THE RIGHT TO DISCONTINUE YOUR EMPLOYMENT AT ANY TIME FOR ANY REASON OR NO REASON.**" *Id.* at 11-12. The Handbook also contain a section entitled "**CENTER DISCIPLINE**," outlining the Center's "progressive discipline system." *Id* at 32-38. Following the description of the Center's progressive discipline system, there is a separate disclaimer at the top of the page in enlarged, bolded, capitalized, and underlined text that states "**THE BUFFALO BILL CENTER OF THE WEST IS AN AT-WILL EMPLOYER, AND CONTINUES TO RESERVE THE RIGHT**

**TO TERMINATE AN EMPLOYEE FOR ANY REASON, OR NO REASON.**" *Id.* at 37. On the same page another paragraph states "Please note that as an at-will employer, the Buffalo Bill Center of the West reserves the right to terminate an employee for any reason, or no reason. The Buffalo Bill Center of the West is not required to follow any of these disciplinary steps, and may proceed directly to termination if it so desires." *Id.* At the bottom of the same page there is a space for employee and supervisor signatures. *Id.* The final page consists entirely of an enlarged, bolded, capitalized and underlined disclaimer restating that employment status is at will and that both the Center and the employee retain the right to end the employment "**AT ANY TIME, FOR ANY REASON OR NO REASON.**" *Id.* at 38.[8]

The disclaimers scattered prominently throughout Exhibits 3 and 4 effectively preclude the existence of an implied employment contract. They are repetitive, prominently located (often in separate paragraphs or even pages), frequently contain headings, and are distinguished from the rest of the text with bolding, underlining, enlargement, and capitalization. Their language is clear and unambiguous. In short, they are designed to attract the reader's attention and notify her in plain terms that the Center can terminate her employment at any time for any reason or no reason at all, regardless of any stated policies. Accordingly, Plaintiff was sufficiently informed that her employment was at will and, as a matter of law, cannot claim the existence of an employment contract from these documents.

To the extent that Plaintiff claims some "other documents" or conduct created an employment contract, the claim still fails. First, "[a]n employee cannot reasonably rely on the

---

[8] Although they omit this final "At-Will Employment" disclaimer page, the remaining pages of Exhibit 4 restate the same "Center Discipline Section." The pages do not appear to be part of the Supervisors Handbook, as they do not have the heading or pagination used throughout the Supervisors Handbook.

conduct or statements of an employer if [s]he has been sufficiently informed that [her] employment is at will." *Andrews v. Sw. Wyo. Rehab. Ctr.*, 974 P.2d 948, 952 (Wyo. 1999). Moreover, the failure to state facts describing "other documents" or conduct that might give rise to an implied contract falls below the standard that a claim be plausible on its face. *Bell Atl. Corp*, 550 U.S. at 570; *Ashcroft*, 556 U.S. at 678.

Accordingly, Plaintiff's breach of contract claim should be dismissed with prejudice. The documents attached to Plaintiff's Complaint and incorporated in her Amended Complaint plainly show that no employment contract (either express or implied) existed. Thus, granting Plaintiff another opportunity to amend her complaint would be futile as to this claim. *See Cohen*, 621 F.3d at 1314-15 (stating that amendment is futile when it is "'patently obvious' that the plaintiff could not prevail on the facts alleged.").

**4.      Count V (*sic*), Defamation of Character, does not state a plausible claim for relief and should be dismissed with prejudice.**

Plaintiff's Amended Complaint does not allege any new facts or theories supporting her Defamation of Character claim. Accordingly, Defendants restate the argument from their first motion to dismiss with minor modifications:

Under Wyoming law, a statement is defamatory if it: "1) tends to hold the plaintiff up to hatred, contempt, ridicule, or scorn; 2) causes the plaintiff to be shunned or avoided; or 3) tends to injure the individual's reputation as to diminish the esteem, respect, goodwill, or confidence in which he is held." *Stevens v. Anesthesiology Consultants or Cheyenne, LLC*, 2018 WY 45, ¶ 40, 415 P.3d 1270, 1284-85 (Wyo. 2018). In general, a Plaintiff must prove special damages to successfully claim defamation, i.e. the Plaintiff must show that the defamatory statement "affect[ed] the plaintiff in some way that is peculiarly harmful to one engaged in [her] trade or

profession." Id. Certain statements, however, are defamatory on their faces and do not require proof of special damages. Such statements "are those which impute 1) a criminal offense; 2) a loathsome disease; 3) a matter incompatible with business, trade, profession, or office; or 4) serious sexual misconduct." Id. Even such statements, however, are not actionable if substantially true. *Tschirgi v. Lander Wyo. State Journal*, 706 P.2d 1116, 1119-20 (Wyo. 1985).

Count V fails to state a plausible claim for relief. The Amended Complaint alleges that "Plaintiff's character and work were being discussed in a negative way to other organizations"; that "Rebecca West and/or other individuals at the [Center] had discussed her termination"; and that the Center "along with the individuals identified herein took the Plaintiff's photos without her knowledge or permission and posted them publicly around the museum with warnings that the Plaintiff had been banned from the [Center] property." *Amended Complaint* ¶¶ 56, 58-59.

The Amended Complaint does not identify who was discussing her "character and work," the content of those "negative" discussions, or with what "other organizations" these "negative" discussions were had. It does not identify any "false allegations" made by any of the individual defendants or to whom those supposed allegations were made. It claims that Rebecca West "discussed her termination" but gives no description of what she said or to whom she said it. As for the "other individuals" who discussed her termination, the Amended Complaint does not even bother to state who those other individuals might be. Moreover, Plaintiff was, in fact, terminated; thus, discussing that truth cannot give rise to a defamation claim. Similarly, as noted in Exhibit 1 attached to Plaintiff's original Complaint and incorporated in Plaintiff's Amended Complaint, Plaintiff was indeed "banned" from the Center and therefore cannot state a claim for defamation on the basis of photos with warnings noting her banishment. *Exhibit 1* at 2 ("Please note, you will not be allowed back into the Center for any reason until further notice.").

Accordingly, the Court should dismiss Plaintiff's Defamation of Character claim with prejudice. Plaintiff squandered her second opportunity to allege a cause of action that is plausible on its face. The Court should deny her a third chance.

**5.      Count VI, Intentional Infliction of Emotional Distress, does not state a plausible claim for relief and should be dismissed with prejudice.**

To recover for intentional infliction of emotional distress under Wyoming law, "a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the defendant intentionally or recklessly caused the plaintiff to suffer severe emotional harm." *Hoflund v. Airport Golf Club*, 2005 WY 17, ¶ 27, 105 P.3d 1079, 1089 (Wyo. 2005). Extreme and outrageous conduct is not merely that which "is tortious or even criminal," nor that done with the intent to inflict emotional distress or with malice. *Id.* (citing Restatement (Second) of Torts, § 46). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 1090. Instead, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 1089. The court determines, as a matter of law, "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 1090. Further, a terminated employee claiming emotional distress must show emotional distress "above and beyond the normal distress that arises from the loss of a job. *Worley*, 1 P.3d at 630. "The ordinary person who is fired from [her] job might worry about [her] future and [her] ability to pay [her] bills. [She] might also lose sleep over it. But this is the kind of distress with which the ordinary person must be expected to cope." *Id.*

Plaintiff has not set forth well-pled factual allegations supporting her claim of outrageous conduct, or of severe emotional distress. Plaintiff has not described in any detail conduct by the

Center or individual defendants that exceeds all bounds of decency. Conclusory allegations of "harassment," "discrimination," "personal vendettas," "conspiring," and "a hostile work environment" do not suffice. *Ashcroft*, 556 U.S. at 678 (a complaint does not suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"). The only allegation that might remotely relate to an intentional infliction of emotional distress claim is the allegation that Nathan Horton assaulted her. However, this conclusory allegation is not stated with sufficient particularity. The Plaintiff vaguely asserts Mr. Horton "laid hands on her in a violent and aggressive manner." She does not describe with any detail when or where this occurred, or what she means by the statement that he "laid hands on her." If Mr. Horton indeed slapped, hit, punched, pinched or otherwise used his hands to strike her, Plaintiff would surely know those details and should be able to allege them in her Amended Complaint. Instead, we are left to wonder whether Mr. Horton merely touched her, in a way that she subjectively perceived to be "aggressive and hostile." That is insufficient. Moreover, Plaintiff has not described in any way the "severe emotional distress" she claims to have suffered as a result of this or any other alleged incident. *Cf. Worley*, 1 P.3d at 630 (citing evidence of diagnosed clinical depression, bouts of crying, remaining in a vegetative state, and diverticulitis as supporting IIED claim).

Accordingly, Count VI fails to state a claim for relief and should be dismissed with prejudice.

## V. Conclusion

Plaintiff has not alleged any discriminatory or retaliatory acts making her "Discrimination because of Age/Gender and Creation of Hostile Work Environment" or "Retaliation for Reporting" claims plausible on their faces. Nor has she alleged any conduct sufficient to state any claim against any individual Defendant. Likewise, her allegations do not support the existence of an implied

employment contract. Nor do they plausibly allege the making of defamatory statements or the intentional infliction of emotion distress.

WHERERFORE Defendants respectfully request that the Amended Complaint be dismissed in its entirety, with prejudice.

DATED this 4th day of October, 2021.

DAVIS & CANNON, LLP

 /s/ Catherine M. Young
Amanda F. Esch (Wyo. State Bar #6-4235)
Catherine M. Young (Wyo. State Bar #7-6089)
P.O. Box 43
Cheyenne, WY  82003
Telephone:  307/634-3210
Fax:  307/778-7118
amanda@davisandcannon.com
catherine@davisandcannon.com

*Counsel for Defendants*
*Buffalo Bill Memorial Association,*
*Kelly Jensen, Rebecca West,*
*Corey Anco, and Melissa Hill*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2021, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing, to the following:

Christopher J. King
P.O. Box 552
Worland, WY 82401
chris@wyoattorney.com

*/s/ Catherine M. Young*