

**FILED**

**Margaret Botkins**
**Clerk of Court**

3:27 pm, 10/28/21

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

BONNIE SMITH,

    Plaintiff,

vs.

BUFFALO BILL MEMORIAL ASSOCIATION, KELLY JENSEN, PETER SEIBERT, REBECCA WEST, COREY ANCO, NATHAN HORTON, and MELISSA HILL,

    Defendants.

Case No.  21-CV-0092

### ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

This matter comes before the Court on the Motion to Dismiss Plaintiff Bonnie Smith's Amended Complaint filed by Defendants Buffalo Bill Memorial Association, Kelly Jensen, Peter Seibert, Rebecca West, Corey Anco, Nathan Horton, and Melissa Hill. (CM/ECF Document [Doc.] 15). Plaintiff Bonnie Smith filed a response. (Doc. 17). Defendants filed a reply. (Doc. 18). The Court has carefully considered the amended complaint and the briefing.

### FACTUAL BACKGROUND

The Court granted Defendants' motion to dismiss Plaintiff's first complaint but gave leave to amend. (Doc. 13). Plaintiff filed an amended complaint on September 20, 2021 (Doc. 14) which again brings claims alleging violations of Title VII of the Civil Rights Act

of 1964 as well as state law claims. The following facts are derived from the amended complaint.

Plaintiff Bonnie Smith ("Smith") started working for the Buffalo Bill Memorial Association ("BBMA") in May of 2010 and was terminated from her position by Rebecca West on March 28, 2019. During her employment, Smith held several positions with the BBMA. At the time of her termination, she was a curatorial assistant in the Draper Department with an annual salary of $41,000. Charles Preston, Ph.D. was the direct supervisor of Smith until he retired on December 31, 2018. At the time of Smith's termination, Rebecca West (who was at the time the curator of the Plains Indian Museum) was represented to be Smith's interim supervisor.

A disciplinary action form was generated by the BBMA on the date of Smith's termination, stating that the reasons for her discharge were 1) insubordination, 2) gross misconduct, and 3) violation of company policies/procedures.[1] Smith asserts that the reasons given for her termination in the disciplinary action form are fabricated, and that she was actually fired because Smith notified federal agencies that the BBMA had incorrectly handled artifacts, that the BBMA had a history of age and gender discrimination, and that interim supervisor Rebecca West had a personal vendetta against Smith. Smith alleges that prior to her termination she had never had poor performance

---

[1] This form, which is referenced in the amended complaint on page 3, was included in the main document of the original complaint on page 11 and is labeled Exhibit 1.

reviews and had been in complete compliance with the Employee Handbook during her tenure with the BBMA.[2]

During her employment with BBMA a male employee with less experience (Corey Anco) was hired and promoted above Smith. Reports were made about Anco's ineptitude and lack of care in his work product, about his mishandling of artifacts, and about his meeting with a looter at the Marquette Mammoth site. When Anco showed pictures to Smith of the various artifacts from the Marquette site, she reported it to an archaeologist for the BLM. Smith alleges that she was fired in retaliation for reporting Anco's incorrect handling of artifacts.

The CEO of BBMA as of 2018, Peter Siebert, "made it very clear that BBMA was wanting to work with younger people" and "had Beverly Perkins create a 'young person club.'"

In August of 2018 BBMA's human resources director, Terry Harley, posted a question on Facebook asking if Smith was a Wiccan. As a result, the attitudes of coworkers towards her changed. Harley also had conversations with individuals related to Smith's religion that created a toxic work environment. Smith requested to be taught how to write grants and was denied "with the stated reason being she was not a male." Her co-worker Nate Horton "laid hands on her in a violent and aggressive manner." Nothing was done in response to Smith's report of the incident to Charles Preston (her supervisor). After the incident, Smith was afraid to be alone with Horton.

---

[2] The Buffalo Bill Center of the West Employee Handbook, which is referenced in the amended complaint on page 4, was included within the original complaint at page 14 and is labeled Exhibit 3.

Melissa Hill (who was in charge of the raptor program) conspired with other Defendants to make false allegations against Smith so that she would be terminated. As a result of Smith's report regarding Horton, he conspired with the other Defendants to make false allegations against Smith. Rebecca West made up inaccurate allegations that Smith was not acting in a professional manner. Smith had numerous letters of commendation and was never disciplined until West became her interim supervisor.

On December 9, 2019, Smith filed a charge of age and sex discrimination, as well as retaliation, with the Wyoming Department of Labor. On February 10, 2021, Smith received her Right to Sue letter from the EEOC.

Smith brings claims of 1) discrimination because of age/gender and hostile work environment, 2) retaliation for reporting, 3) breach of contract, 4) defamation of character, and 5) intentional infliction of emotional distress. Defendants seek dismissal of all claims with prejudice.

## STANDARD OF REVIEW

The standard of review on a motion to dismiss is well-established. To survive a motion to dismiss, a plaintiff's "complaint must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). For the claims of a complaint to meet the standard of plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This plausibility standard is "not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id*. Thus, although the plaintiff does not need to provide detailed factual allegations, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is deficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When ruling on a motion to dismiss for failure to state a claim, it is not the Court's function "to weigh [the] potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565-66 (10th Cir. 1991). It must accept all factual allegations in the complaint as true. *Twombly*, 550 U.S. at 572. The Court must also view the facts in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). And, while factual assertions are accepted as true, legal conclusions are not. *Berneike v. CitiMortgage*, 708 F.3d 1141, 1144 (10th Cir. 2013).

## ANALYSIS

The sufficiency of each of Plaintiff's claims will be assessed in turn.

I.   *Claim One – discrimination because of age/gender and creation of hostile work environment*

Plaintiff alleges that she was denied a promotion due to her age and gender and that BBMA hired a younger man (Anco) for the position who had no experience and placed

him in a position for which he was not qualified. Plaintiff alleges that BBMA discouraged her advancement because she is older and female.

Plaintiff alleges that "nothing was done" when she reported concerns to her supervisor and to HR related to Nate Horton's violence towards her and that such inaction constituted a hostile work environment. She also alleges that "the inclusion of her religion into her work and meeting conducted [sic] related to her being a Wiccan constituted a hostile work environment."

In the order dismissing the first complaint (Doc. 13), the Court found that Plaintiff failed to exhaust her administrative remedies as to a claim of discriminatory failure to promote due to age or gender. Plaintiff does not offer any additional facts in the amended complaint that change this outcome. Nor does Plaintiff address exhaustion regarding the failure-to-promote theory of discrimination in her response brief (Doc. 17). Accordingly, this part of claim one is once again dismissed.

Next, the Court will address the claim for hostile work environment stemming from Plaintiff's report of Horton's violence and BBMA's subsequent failure to take remedial action. "Under Title VII, it is an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). This includes an employee's claims of a hostile work environment based on protected category discrimination. *Id.*

Plaintiff does not allege that her claim of hostile work environment related to Horton is connected to discrimination against her due to her age or gender. Plaintiff merely alleges that she was assaulted by Horton and that "nothing was done" in response to her report of the incident. She does not argue that the assault was precipitated by her age or gender. Nor does she argue that BBMA's failure to respond to her report was a result of her age or gender. Accordingly, Plaintiff's claim for Title VII hostile work environment as it relates to the Horton incident is dismissed.

The Court will next address the claim for hostile work environment stemming from BBMA's HR director's post on Facebook asking if Plaintiff was Wiccan. As an initial note, Plaintiff's first claim is for age and gender—not religious—discrimination. This is a proper basis for dismissal alone. However, the Court will construe the claim as intending to incorporate religious discrimination as it relates to a hostile work environment for the limited purposes of this order.

Title VII prohibits employment practices "that permeate the workplace with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) (quoting *Harris*, 510 U.S. at 21). Plaintiff alleges that HR director Terry Harley asked on Facebook if Plaintiff was Wiccan and that he had conversations "with other individuals" about Plaintiff's religion. As a result of the Facebook post, coworker's attitudes became "dramatically different" and Harley's conversations "further created a toxic work environment."

First, Plaintiff does not specify whether Harley took these actions in a personal capacity or as a representative of BBMA. Plaintiff also does not indicate whether the conversations about her religion occurred in the workplace or elsewhere. As such, the Court cannot discern whether Harley's actions constitute "employment practices that permeate the workplace with discriminatory intimidation, ridicule, and insult." *Tademy*, 614 F.3d at 1138. Second, Plaintiff does not allege adequate facts that allow the Court to draw the inference that the religious harassment complained of was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* The bare allegation that Harley's conversation with unnamed individuals created a toxic work environment is conclusory and does not put Defendants on notice of the parameters of the claim. And the allegation that Plaintiff's coworkers' attitudes towards her became "dramatically different" after Harley's Facebook post does not necessarily equate to harassment, let alone harassment that rises to the level of a hostile work environment.

Plaintiff, in her response brief (Doc. 17), argues that dismissal of any claims at this stage is based on misinterpreted requirements of pleading and that discovery is needed. While it is true that "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). "[T]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.* (quoting *Kansas Penn. Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Here, there does not seem to be an

asymmetry of information. Even without discovery, Plaintiff should be able to allege facts that are more specific than those proffered in the amended complaint, such as whether the Facebook account was tied to BBMA, what the conversations about her religion were comprised of, whether she found Harley's question or conversation about her religion offensive, how her coworker's attitudes towards her changed, and how, specifically, the alleged harassment altered conditions of her employment and created an abusive working environment. As she does not do so, Plaintiff has not "nudged [her] claim across the line from conceivable to plausible." *Id.* at 1191. Accordingly, Plaintiff's claim for Title VII hostile work environment as it relates to HR director Harley is dismissed.

It is not easy to discern which of the remaining facts alleged in the "General Factual Allegations" section of the amended complaint are intended, if at all, to bolster the claim for age and gender discrimination and hostile work environment. Plaintiff's first claim does not incorporate these facts by reference, but in an effort to be thorough the Court will address those facts which seem questionably related.

Plaintiff alleges that Defendant[3] has a history of both age and gender discrimination. However, no facts beyond those related specifically to Plaintiff are alleged. This allegation, insofar as it relates to the claim for age and gender discrimination, is conclusory and is dismissed.

Plaintiff alleges that she requested to be taught how to write grants to improve her position at BBMA but was denied "with the stated reason being she was not a male." There

---

[3] Assumedly Plaintiff is referring to BBMA when using the singular "Defendant."

are no additional facts given such as when this incident occurred or who was involved. A prima facie case of sex discrimination "must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.,* 432 F.3d 1169, 1173 (10th Cir. 2005)). Adverse employment actions "are those that cause a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision that causes a significant change in benefits." *Stinnett v. Safeway, Inc.,* 337 F.3d 1213, 1217 (10th Cir. 2003) (quoting *Sanchez v. Denver Public Schools,* 164 F.3d 527, 532 (10th Cir. 1998)).

Any claim related to a discriminatory failure to promote has already been dismissed on grounds of non-exhaustion of administrative remedies. Plaintiff does not allege that the refusal to teach her to write grants constituted a reassignment or caused a significant change in benefits. Accordingly, the Court finds that Plaintiff has not alleged a viable adverse employment action which, if true, could establish a prima facie case of gender discrimination. Insofar as this allegation was intended to be a claim for Title VII gender discrimination, it is dismissed.

Plaintiff alleges that any report about a male employee was ignored and that the male employees at BBMA were described as "Chuck's Boys." Plaintiff also alleges that Peter Siebert made it clear that BBMA wanted to work with young people and that he had Beverly Perkins create a "young person club." These facts do not allege any discernible

adverse employment action, fail to state a claim for gender or age discrimination, and are dismissed insofar as they were intended to represent a claim.

All possible iterations of Plaintiff's first claim have been dismissed. Accordingly, Plaintiff's claim for age/gender discrimination and hostile work environment is DISMISSED WITH PREJUDICE.

## II.  *Claim Two – retaliation for reporting*

This claim was dismissed from the first complaint on the basis that Plaintiff's report to BBMA supervisors and to federal agencies regarding a younger male who exhibited substandard job performance and destroyed federal property did not constitute "protected opposition." (Doc. 13). The claim is pled identically in the amended complaint and Plaintiff, in her response brief (Doc. 17), does not argue that this Court's analysis in the first order on dismissal was incorrect or failed to understand how the alleged facts related to the claim for retaliation. Accordingly, Plaintiff's claim for retaliation for reporting is DISMISSED WITH PREJUDICE.

## III.  *Remaining Claims*

As explained in the Court's prior order, the remaining claims in the case (breach of contract, defamation, and intentional infliction of emotional distress) are state law claims over which this Court has supplemental, not original, jurisdiction. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998)). "Needless decisions of state law should be avoided… if the federal claims are dismissed before trial, even

though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the above-stated reasons, the Court determines that Plaintiff's federal claims are DISMISSED WITH PREJUDICE. Pursuant to 28 U.S.C. § 1367(c)(3), Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE. Defendants' motion to dismiss amended complaint (Doc. 15) is GRANTED. The Clerk of Court is directed to close this case and enter judgment accordingly.

Dated this 28th day of October, 2021.

*[signature: Nancy D. Freudenthal]*

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE